UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

FILI ABUNDIZ CARRANZA, on his own behalf and
on behalf of others similarly situated,

                              Plaintiff,                              **20-cv-02635 (PAE) (KHP)**

            -against-                                                 **OPINION & ORDER**

VBFS, INC. d/b/a M & M MARKET DELI et al.,

                              Defendants.

-----------------------------------------------------------------X

**KATHARINE H. PARKER, United States Magistrate Judge:**

        Plaintiff Fili Abundiz Carranza, individually and on behalf of others similarly situated,

brings this action against Defendant VBFS Inc. d/b/a M & M Market Deli ("M&M") and against

Virgilio Branco and Fernando Pinho Sanches, the former owners and managers of M&M (and

collectively with M&M, "Defendants").  Plaintiff claims that Defendants violated the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), by failing

to (1) pay Plaintiff and other non-managerial employees the statutory minimum wage under

the FLSA and NYLL, (2) pay Plaintiff and other non-managerial employees for overtime hours

worked, and (3) satisfy other notice and wage statement requirements under the NYLL.

Plaintiff further claims that Defendants breached an implied contract for reimbursement of the

costs of maintaining Plaintiff's bicycle, which Plaintiff used to carry out his job as a deliveryman.

        Plaintiff has moved for conditional certification of his FLSA claims as a collective action

and for leave to disseminate notice to the putative FLSA collective, pursuant to 29 U.S.C. §

216(b).  In connection with the motion, Plaintiff asks that the Court compel Defendants to

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/2/2021

produce identifying information for former employees so that the proposed notice may be efficiently sent to all individuals who worked in non-managerial roles at M&M for the three-year period preceding the filing of the Complaint.  Carranza also requests that he be allowed to use a variety of methods to deliver the proposed notice to the potential opt-in plaintiffs. Further, Plaintiff moves to extend the opt-in period to 90 days and asks that the statute of limitations for the potential opt-in Plaintiffs be equitably tolled for the duration of the opt-in period.

While Defendants do not oppose conditional certification of the FLSA collective at this time, they oppose several terms related to the conditional certification and Plaintiff's proposed manner and method of providing notice to potential opt-in plaintiffs.  Specifically, Defendants request: (1) that the definition of the proposed collective should only include former employees, reflecting the fact that M&M permanently closed on February 28, 2020 and has no current employees; (2) that the conditional certification should provide for a 60-day opt-in period, as opposed to the 90-day opt-in period suggested by Plaintiff; (3) that equitable tolling of the FLSA statute of limitations is inappropriate in this case; (4) that Defendants not be required to post the notice of pendency at M&M's former premises; and (5) that the Court deny several of Plaintiff's proposed methods of disseminating the notice of pendency.

**BACKGROUND**

Plaintiff Fili Abundiz Carranza worked for Defendants as a deliveryman from approximately 1990 to February 28, 2020.  (ECF No. 1 ¶ 7.)  Carranza contends that during this

time he and other non-managerial M&M employees were subjected to, and harmed by, Defendants' willful violations of the FLSA and the NYLL.

Plaintiff submitted a sworn affidavit in conjunction with the instant motion stating that Defendants employed a consistent practice and policy of not paying any of their employees minimum wage or overtime pay, as is required under the FLSA and the NYLL.  (ECF No. 28-5). Instead, Carranza claims he was paid a flat fee of $300 per week from 2014 until 2018, a weekly fee of $600 throughout 2019, and $800 per week from January 1, 2020 until January 23, 2020, despite regularly working over 40-hour work weeks.  (*Id.* ¶¶ 10-13.)  Throughout his employment, Carranza alleges that he was paid in cash on a weekly basis, did not receive any required wage statements, and was never informed of his hourly rate.  (*Id.* ¶¶ 16-18.) Furthermore, despite consistently working in excess of 40 hours per week, Carranza claims that he was not paid overtime or New York's spread of hours premium for shifts lasting longer than ten hours.  (*Id.* ¶¶ 22-23.)  Carranza also claims that, during the period from March 28, 2014 to January 23, 2020, he worked from 8:00 AM to 7:00 PM without a break, and that at all relevant times he worked without a fixed time for lunch or dinner.  (*Id.* ¶¶ 5, 8.)  Finally, Plaintiff alleges that during the relevant period Defendant required their deliverymen – Carranza among them – to bear all out-of-pocket expenses for purchasing and maintaining their delivery vehicles.  For instance, Carranza notes that Defendants required him to pay the maintenance costs for his bicycle.  (ECF No. 28-1 ¶¶ 117-18.)

Carranza also submitted a spreadsheet showing the name, position, work period, work schedule, and pay of many of his coworkers.  (ECF No. 28-5 ¶ 25.)  This spreadsheet shows at

least six other employees who, Plaintiff alleges, were similarly underpaid by Defendants during the relevant period.

Plaintiff further alleges that the individual Defendants – Virgilio Branco and Fernando Pinho Sanches – owned and operated M&M.  According to Carranza, these defendants "(1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at [M&M]."  (ECF No. 28-1 ¶¶ 12, 17.)

## LEGAL STANDARD

The FLSA provides that "any one or more employees" may bring an action against an employer "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).  To become parties to such an action, employees other than the named plaintiff(s) must opt in by filing written consents in the court in which the action is brought.  *Id.* "Although they are not required to do so by FLSA, district courts 'have discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

Courts in this Circuit apply a two-step method for certification of a collective action under Section 216(b) of the FLSA.  In the first step – known as "conditional certification" – the named plaintiff must make a "'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'"  *See Myers*, 624 F.3d

4

at 55 (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).  If the plaintiff can make such a showing, the trial court may send a notice to potential opt-in plaintiffs.  *Id.*  At the second stage, which typically occurs after discovery has been completed, the court determines whether the plaintiffs who opted in are in fact "similarly situated" to the named plaintiff(s).  *See Myers*, 624 F.3d at 555.  If not, the court may decertify the collective action and dismiss the opt-in plaintiffs' claims without prejudice.

During the initial "conditional certification" stage, the requirement of a "modest factual showing" cannot be satisfied solely by unsupported assertions.  *Id.*  However, because the purpose of this first stage is "merely to determine *whether* 'similarly situated' plaintiffs do in fact exist," plaintiffs have a low burden of proof.  *Id.* (emphasis in original); *accord Damassia v. Duane Reade, Inc.*, No. 04-cv-8819 (GEL), 2006 U.S. Dist. LEXIS 73090, at *3 (S.D.N.Y. Oct. 4, 2006) (quoting *Wraga v. Marble Lite, Inc.*, No. 05-cv-5038 (JG) (RER), 2006 U.S. Dist. LEXIS 60457, at *1-2 (E.D.N.Y. Aug. 22, 2006)) ("a plaintiff's burden at this preliminary stage is 'minimal'").  A showing that plaintiffs "were subjected to certain wage and hour practices at the defendants' workplace and to the best of their knowledge, and on the basis of their observations, their experience was shared by members of the proposed class" is a sufficient basis from which to infer a "common policy" required for conditional certification at this stage. *Cortes v. New Creators, Inc.*, No. 15-cv-5680 (PAE), 2015 U.S. Dist. LEXIS 153730, at *9 (S.D.N.Y. Nov. 12, 2015) (citing *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 368 (S.D.N.Y. 2007)).  Documents properly considered in this inquiry include a plaintiff's own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members.

*Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 557-58 (S.D.N.Y. 2013).  In an appropriate case, conditional collective certification may be based solely on the personal observations of one plaintiff.  *See Hernandez v. Bare Burger Dio Inc.*, No. 12-cv-7794 (RWS), 2013 U.S. Dist. LEXIS 89254 (S.D.N.Y. June 18, 2013) (granting conditional collective action certification of all tipped employees at a single Bareburger location based on one employee's declaration).

Furthermore, there is consensus in this District that when a plaintiff asserts the existence of a commonly applied unlawful policy based on observations of coworkers or conversations with them, the plaintiff "'must provide a minimum level of detail regarding the contents of those conversations or observations.'"  *Racey v. Jay-Jay Cabaret, Inc.*, No. 15-cv-8228 (KPF), 2016 U.S. Dist. LEXIS 67879, at *11 (S.D.N.Y. May 23, 2016) (quoting *Reyes v. Nidaja, LLC*, No. 14-cv-9812 (RWS), 2015 U.S. Dist. LEXIS 101728 (S.D.N.Y. Aug. 3, 2015)).  A plaintiff has provided this minimum level of detail if a court "'can fairly infer' that other [employees] 'labored under similar working conditions and thus suffered the same violations of the FLSA.'"  *See Racey*, 2016 U.S. Dist. LEXIS 67879, at *11 (quoting *Guzman v. Three Amigos SJL Inc.*, 117 F. Supp. 3d 516, 525 (S.D.N.Y. 2015)).

**ANALYSIS**

Plaintiff's affidavit satisfies the modest showing that is required at the conditional certification stage.  Plaintiff's assertions and the supporting materials submitted sufficiently bolster Plaintiff's contentions that he and his fellow employees were subjected to certain unlawful wage and hour practices at the Defendants' workplace, as described above.

6

Moreover, Defendants agree that Plaintiff has satisfied that burden for the limited purpose of resolving the instant motion for conditional certification.

As mentioned above, Plaintiff Carranza has submitted a sworn affidavit in which he asserts that he personally spoke with certain employees at M&M, overheard conversations about his coworker's compensation, personally witnessed his coworkers coming to and leaving work, and in one case, was erroneously given his coworker's paycheck.  (ECF No. 28-5 ¶¶ 25-76).  As a result, Carranza learned that several employees at M&M, including himself, worked more than 40 hours per week and were compensated with a flat monthly wage that violated the minimum wage and overtime provisions of the FLSA and the NYLL.  Carranza's affidavit details the names of certain coworkers, their physical descriptions, and the timing and circumstances of at least some of his interactions with them.  Accordingly, upon a detailed review of the evidence, the Court can reasonably infer that Carranza is similarly situated to these other employees for purposes of the collective certification inquiry.  *See Mei Rong Du v. Dingxiang Inc.*, No. 19-cv-11924 (JPO) (BCM), 2020 U.S. Dist. LEXIS 237500, at *15 (S.D.N.Y. Dec. 17, 2020) (finding a sworn declaration, containing information learned from seven other employees, identified by name or nickname, about the wages they were paid and the hours they worked, sufficient to satisfy the modest showing); *Cuaya v. VI Dev. Grp., LLC*, No. 19-cv-4290 (JLC), 2020 U.S. Dist. LEXIS 166324, at *15 (S.D.N.Y. Sept. 10, 2020) (conditionally

certifying collective based on sworn declaration attesting that plaintiff had spoken with at least

ten other employees about their wages and hours).[1]

"It is not necessarily problematic that plaintiff submits a single affidavit, which in turn

relies in part on" hearsay. *Yi Mei Ke v. JR Sushi 2 Inc.*, No. 19-cv-7332 (PAE) (BCM), 2021 U.S.

Dist. LEXIS 8045, at *21 (S.D.N.Y. Jan. 15, 2021).  In this District, courts "routinely grant[]

conditional collective certification based solely on the personal observations of one plaintiff's

affidavit." *Hernandez*, 2013 U.S. Dist. LEXIS 89254, at *7 (collecting cases); *see also Cuaya*, 2020

U.S. Dist. LEXIS 166324, at *17.  Moreover, at this preliminary stage, "courts regularly rely on

plaintiffs' affidavits and hearsay statements in determining the propriety of sending notice."

*Cuaya*, 2020 U.S. Dist. LEXIS 166324, at *17-18 (quoting *Salomon v. Adderley Indus., Inc.*, 847 F.

Supp. 2d 561, 563 (S.D.N.Y. 2012)).  Furthermore, Defendants do not oppose conditional

certification.  (ECF No. 30 at 1).  Under these circumstances, Carranza's Affidavit provides

sufficient detail to meet Plaintiff's minimal burden of showing that he is similarly situated to

other members of the proposed collective.

As noted above, while Defendants do not object to conditional certification, they object

to several specific terms of the conditional certification and the manner and method of

providing notice.  The Court will address the terms proposed by Plaintiff and each of

Defendants objections below.

## I.    *Defining the Proposed Collective*

---

[1] The Court notes that Plaintiff also submits a copy of a "Related Case Complaint" in an apparent attempt to supplement his affidavit.  (*See* ECF No. 28-2).  Allegations by Plaintiff's counsel in a different case are not factual showings related to the instant motion and, therefore, do not persuade this Court.

Defendants request that the collective be defined as: "All former non-exempt and non-managerial employees who previously worked for Defendants at M&M Market Deli, formerly located at 529 Broome Street, New York, NY 10013 from March 28, 2017 through February 28, 2020 who choose to opt in to this FLSA collective action by completing and timely filing consent to join form." (*Id.* at 1-2.)  The principal difference between this proposed definition and Plaintiff's definition is the exclusion of current M&M employees.  Defendants counsel has repeatedly represented to this Court that M&M permanently ceased operations on February 28, 2020 and that, accordingly, there are no current employees that could opt-in to the collective.  *Id.*  Of course, there is no reason why the proposed collective should include these non-existent employees.  Thus, in light of Defendants' representations, the Court will adopt Defendants' proposed definition, stated above.

## II.     *Production of Contact Information*

Plaintiff requests that Defendants be ordered to provide contact information for the potential opt-in plaintiffs, including their names, last known phone numbers, addresses, and emails as well as the former employees' social media account handles for WhatsApp, WeChat, and Facebook, which Plaintiff contends will assist in effectuating notice.  Further, Plaintiff asks that this information be provided in Microsoft Excel format.

Courts in this District routinely allow plaintiffs to receive contact information for potential opt-in plaintiffs, including last known addresses, telephone numbers, and emails.  *See, e.g., Martin v. Sprint/United Mgmt. Co.*, No. 15-cv-5237 (PAE), 2016 WL 30334, at *19 (S.D.N.Y. Jan. 4, 2016).  Thus, Defendants must produce this more traditional information in a reasonably

convenient format to the extent that Defendants possess that information.  However, Defendants maintain that they do not have complete names nor any contact information whatsoever for most of the employees that would fall within the definition described above. Therefore, with very little to go on, it will be relatively difficult for Plaintiff to pinpoint the potential opt-in plaintiffs in this case.  While production of social media contact information is relatively novel and can give rise to privacy concerns, more flexible notice options are warranted in this case due to the limited information kept by the Defendants.  *See Ling Chen v. Asian Terrace Rest., Inc.*, No. 19-cv-7313 (BMC), 2020 U.S. Dist. LEXIS 126417, at *15 (E.D.N.Y. July 17, 2020).  Accordingly, to the extent that Defendants possess any WhatsApp, WeChat, or Facebook contact information for former non-managerial employees, Defendants must produce that information to Plaintiff in a reasonably convenient format as well.

### III.  *Statute of Limitations*

The statute of limitations applicable to a claim for unpaid wages and/or overtime compensation under the FLSA is two years from the date that the claim accrued or three years for a cause of action arising out of a willful violation.  29 U.S.C. § 255(a).  At the conditional certification stage, mere allegations of willful FLSA violations are sufficient to apply the three-year statute of limitations for purposes of sending a notice to putative members of a contemplated collective. *Francis v. A & E Stores, Inc.*, No. 06-cv-1638 (CLB) (GAY), 2008 WL 2588851, at *3 (S.D.N.Y. June 26, 2008), adopted as modified, 2008 WL 4619858 (S.D.N.Y. Oct. 16, 2008).

Plaintiff has alleged willful conduct by Defendants and Defendants do not take issue with a three-year limitations period at this stage of the proceedings.  Accordingly, a three-year limitations period will be used in the pendency notice to the putative members of the collective in this case.

### IV.      *Duration of the Opt-In Period*

The standard opt-in period in this Circuit, following conditional certification, is 60 days. *See Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 566-67 (S.D.N.Y. 2015) ("[c]ourts in this Circuit routinely restrict the opt-in period to sixty days") (quoting *Fa Ting Wang v. Empire State Auto Corp.*, No. 14-cv-1491 (WFK), 2015 WL 4603117, at *11 (E.D.N.Y. July 29, 2015) (collecting cases)).  Plaintiff, however, requests a longer opt-in period of 90 days.  Plaintiff argues that the 90-day opt-in period would not prejudice Defendants and that a longer opt-in period is otherwise warranted due to complications presented by the COVID-19 pandemic.  Moreover, Plaintiff notes that many of the potential opt-in plaintiffs are foreign-born and may be delayed in opting in due to unspecified delays caused by international travel.

For their part, Defendants recommend the usual 60-day period typically employed by Courts in this Circuit.  Defendants note that Plaintiff's speculative, generalized concerns concerning international travel and the COVID-19 pandemic are insufficient grounds for extending the opt-in period.  (ECF No. 30 at 3).  The Court agrees.  To extend the notice period beyond the typical 60-day timeframe, Plaintiff needs to show the presence of special circumstances warranting such an extension, not lack of harm or prejudice to Defendants.  *See Yap*, 146 F. Supp. 3d at 566-67 (limiting opt-in period to 60 days where plaintiffs failed to

11

demonstrate "special circumstances" that would warrant a 90-day opt-in period).  While the

pandemic has affected everyone in various ways, general COVID-19-related concerns, without

more, are insufficient to make out special circumstances requiring that the opt-in period be

extended.  *See Quiang Lu v. Purple Sushi Inc.*, 447 F. Supp. 3d 89, 98 (S.D.N.Y. 2020) (rejecting a

request for a 90-day opt-in period during the pandemic).

###### V.    Equitable Tolling

Ordinarily, the statute of limitations in an FLSA collective action continues to run with

respect to each potential plaintiff's collective action claim until that plaintiff files the written

consent form opting into the suit.  29 U.S.C. § 256(b).  However, equitable tolling may be

warranted to avoid inequitable circumstances, where plaintiffs have acted with reasonable

diligence in pursuing their claims, but where "a substantial number of class members may . . .

be time-barred through no fault of counsel or the class representative." *Jackson v. Bloomberg,

L.P.*, 298 F.R.D. 152, 170 (S.D.N.Y. 2014).

Here, in order to avoid such inequitable circumstances, Plaintiff proactively requests

that the Court toll the statute of limitations for all potential opt-in plaintiffs for 90 days until the

expiration of the Opt-In Period.  (ECF No. 29 at 23).  The Court finds this request to be

premature.

To start, "[e]quitable tolling is appropriate only in rare and exceptional circumstances . .

. where a plaintiff has been prevented in some extraordinary way from exercising his rights."

*Andon v. SDG Props., Inc.*, No. 17-cv-7876 (ALC) (KHP), 2018 U.S. Dist. LEXIS 140913 at *3

(S.D.N.Y. Aug. 20, 2018) (citation and internal quotation omitted).  Because "the application of

the equitable tolling standard is 'highly case-specific,' and the 'burden of demonstrating the

appropriateness of equitable tolling . . . lies with the plaintiff,'" equitable tolling is generally not

appropriate at the conditional certification stage. *Contrera v. Langer*, 278 F. Supp. 3d 702, 726

(S.D.N.Y. 2017) (quoting *Wilder v. U.S. Dep't of Veterans Affairs*, 175 F. Supp. 3d 82, 90 (S.D.N.Y.

2016)).  Indeed, the cases relied on by Plaintiff on this issue involve quite different situations

where, unlike in the instant case, rare and exceptional circumstances did exist.

Here, Carranza fails to allege any exceptional circumstances; he merely reiterates

pandemic-related concerns and points to Governor Cuomo's executive orders tolling various

filing deadlines due to the pandemic.  (ECF No. 29 at 23).  This argument would likely carry

more weight in New York state courts.  However, the FLSA is a federal statute and courts in this

District have been reluctant to enact broad-sweeping pandemic accommodations, choosing

instead to focus on the specific hardships of individual parties.  This Court has been operating

during the entirety of the pandemic and there has been no bar to filing cases.  Indeed, the

number of filings in 2020 was nearly on par with 2019.  Thus, COVID has not been a bar to filing

claims.  To the extent that some opt-in plaintiffs may miss the notice due to a change in

residence or other reasons, (ECF No. 29 at 23-24,) such issues are common and do not

constitute exceptional circumstances requiring equitable tolling.

For avoidance of doubt, while the Court will not toll the limitations period at this

juncture, the Court's ruling on this issue is made without prejudice to Plaintiff's right to

resubmit this request after additional discovery and/or facts warrant such an application.  *See,*

*e.g.*, *Cuaya*, 2020 U.S. Dist. LEXIS 166324, at *41-42 (denying equitable tolling without prejudice

because plaintiff "failed to allege that any potential opt-in plaintiff exists 'who intends to join the collective but who risks becoming time-barred or has been prevented in some extraordinary way from exercising his rights'").

### VI.    Methods of Notice

Plaintiff proposes sending the pendency notice to members of the collective in Spanish as well as English.[2] (ECF No. 29 at 21.)  "Generally, courts permit notice to be 'translated into the mother tongue of non-English speaking groups of potential plaintiffs.'" *Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 76 (E.D.N.Y. 2016) (quoting *Colon v. Major Perry Street Corp.*, No. 12-cv-3788 (JPO), 2013 U.S. Dist. LEXIS 93021, at *8 (S.D.N.Y. July 2, 2013)); *accord Sanchez v. El Rancho Sports Bar Corp.*, No. 13-cv-5119 (RA), 2014 U.S. Dist. LEXIS 66234, at *15 (S.D.N.Y. May 13, 2014) (Spanish-language notice forms permitted).

Here, Carranza attests that many of his coworkers are from Spanish-speaking countries or of Spanish-speaking descent.  (*See generally* ECF No. 28-5.)  Furthermore, Carranza himself speaks Spanish.  (*Id.* ¶ 78.)  Under these circumstances, the Court agrees that Plaintiff's counsel should have the notice translated into Spanish and should disseminate it in both languages.

Plaintiff also requests that the Court: (1) authorize Plaintiff's counsel to disseminate the notice via mail, email, text message or social media chat; on Plaintiff's counsel's website; and on social media groups; (2) exclude Defendants' attorneys' information from the notice; (3) require Defendants to post the notice in a conspicuous location in their store and to include it

---

[2] While Plaintiff appears to only request that all notices be "in Spanish languages," the Court presumes that Plaintiff desires the notice to be in Spanish in addition to, not instead of, English. (ECF No. 29 at 21.)

in employees' pay envelopes; and (4) authorize Plaintiff's counsel to send a reminder, via mail and email, to all individuals who have failed to respond halfway through the notice period. (ECF No. 29 at 15-18.) For the reasons set forth below, the Court will grant some, but not all, of these requests.

To start, the Court agrees that disseminating the notice by mail, email, text message, and social media chat (addressed specifically to members of the proposed collective) is appropriate. *See Lu*, 447 F. Supp. 3d at 96-97 (permitting notice to be "disseminated in any relevant language via mail, email, text, or social media platform"); *Huang v. Shanghai City Corp.*, No. 19-cv-7702 (LJL), 2020 U.S. Dist. LEXIS 181958, at *16 (S.D.N.Y. Oct. 1, 2020) (permitting notice on social media because "[s]ocial media is now used to convey all kinds of important messages to the populace and has become an important means of receiving information"). The notice may also be posted on Plaintiff's counsel's website; indeed, Defendants do not oppose this request. Neither do Defendants object to Plaintiff's request to exclude Defendants' attorneys' information from the notice. Accordingly, the request to omit Defendants' attorneys' information is reasonable and is hereby granted. *See Chen*, 2020 U.S. Dist. LEXIS 126417, at *15. Finally, with respect to Plaintiff's request that opt-in reminders be sent via mail and email halfway through the opt-in period, the Court similarly finds this request to be reasonable. *See Chhab v. Darden Rests., Inc.*, No. 11-cv-8345 (NRB), 2013 U.S. Dist. LEXIS 135926, at *51 (S.D.N.Y. Sept. 19, 2013) (collecting cases).

On the other hand, however, the Court will not require Defendants to post the notice at their store. As discussed above, M&M permanently closed on February 28, 2020 and there are

15

no current employees to be notified of the putative collective.  For similar reasons, the Court will also not require Defendants to include the notice in employee pay envelopes.

Additionally, the Court will not authorize Plaintiff's counsel to post a short form of the notice on public social media groups.  Posting on public social media groups, unlike personalized social media messages, "would be overbroad and not likely to materially improve the chances of notice" to a relatively small group of workers.  *Zhang v. Ichiban Grp., LLC*, No. 17-cv-148 (MAD) (TWD), 2020 U.S. Dist. LEXIS 36218, at *35 (N.D.N.Y. Mar. 3, 2020) (quoting *Qian Xiong Lin v. DJ's Int'l Buffet*, No. CV 17-cv-4994 (JS) (AYS), 2019 U.S. Dist. LEXIS 193947 (E.D.N.Y. Nov. 7, 2019)); *see also Yuefeng Shi v. TL & CG Inc.*, No. 19-cv-08502 (SN), 2020 U.S. Dist. LEXIS 142853, at *12-13 (S.D.N.Y. Aug. 10, 2020) (permitting distribution of notice by targeted social media message only).  While the Court notes Plaintiff's anticipated concerns in notifying potential opt-in plaintiffs during the pandemic, the notice of pendency must have a substantial likelihood of reaching the plaintiffs specifically, not the world generally.  Here, Plaintiff has failed to provide any evidence that any potential plaintiffs belong to these groups – indeed, Plaintiff has failed to even specify the social media groups themselves.

### VII.    *Meet and Confer*

Based on the guidance outlined in this Opinion and Order, the parties are directed to meet and confer regarding the particular contents of the notice of pendency.  The parties shall file a draft notice with the Court by no later than April 16, 2021.  If the parties cannot agree on certain aspects of the proposed notice, they shall set forth their respective positions in a joint

letter to the Court, not to exceed six pages in length, attaching a proposed notice form clearly indicating the language preferred by each party.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for conditional certification of his FLSA claims (ECF No. 27) and his related requests are GRANTED in part and DENIED in part.  The Court conditionally certifies a collective of non-exempt and non-managerial employees who previously worked for Defendants at M&M Market Deli, formerly located at 529 Broome Street, New York, NY 10013 from March 28, 2017 through February 28, 2020.  The parties shall file a draft notice with the Court by no later than **April 16, 2021**, consistent with the guidance provided in this Opinion and Order.

**SO ORDERED.**

DATED:        New York, New York
              April 2, 2021

_____
KATHARINE H. PARKER
United States Magistrate Judge